UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CHRISTIN M., )<br>)<br>       Plaintiff )<br>)<br>v. )<br>)<br>ANDREW M. SAUL, )<br>Commissioner of Social Security, )<br>)<br>       Defendant ) | No. 2:20-cv-00179-JAW |

**REPORT AND RECOMMENDED DECISION**[1]

This Supplemental Security Income (SSI) appeal raises the question of whether the administrative law judge (ALJ) supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ (i) erroneously concluded that she could perform certain representative jobs despite vocational expert (VE) testimony that her verbal aptitude, as indicated by a Verbal Comprehension Index test score, would preclude her from such performance, and (ii) inadequately addressed a post-hearing vocational affidavit. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 13) at 1, 4. I agree that the ALJ's rejection of material VE testimony is unsupported by substantial evidence and, on that basis, recommend that the court vacate the commissioner's decision and remand this case for further proceedings consistent herewith. I need

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

not and do not reach the plaintiff's additional contention that the ALJ inadequately addressed a post-hearing vocational affidavit.

Following two prior remands – one by this court and one by the Appeals Council, *see* Record at 1052 – the ALJ found, in relevant part, pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), that the plaintiff had the severe impairments of patellofemoral osteoarthritis of the right knee, depression, attention deficit hyperactivity disorder, an anxiety disorder, obesity, and substance abuse, Finding 2, Record at 1056; that she had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b), except that she could stand or walk for no more than two hours in an eight-hour workday, was unable to kneel, crouch, crawl, or climb ladders, ropes, or scaffolds, needed to avoid tasks requiring detailed or complex instructions or tasks but could understand to carry out short, simple instructions, needed to avoid work involving making judgments on complex work-related decisions and work in crowds or with the public, could work in environments with a small group of no more than seven or eight coworkers, and could tolerate supervision that was not intense, with only occasional contact, Finding 4, *id*. at 1059; that, considering her age (22 years old, defined as a younger individual, on her application date, July 29, 2011), education (limited 10th-grade education), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 6-9, *id*. at 1070-71; and that she, therefore, had not been disabled from July 29, 2011, the date her SSI application was filed, through the date of the decision, April 3, 2019, Finding 10, *id*. at 1073. The Appeals Council declined to assume jurisdiction of the case following remand, *id*. at 1036-39, making the decision the final

determination of the commissioner, 20 C.F.R. § 416.1484(a), (b)(2); *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff contends that the ALJ's Step 5 finding cannot stand because she erroneously rejected VE testimony elicited on cross-examination that the plaintiff's verbal aptitude would preclude the performance of jobs identified by the VE on which the ALJ relied at Step 5 to conclude that the plaintiff was not disabled. *See* Statement of Errors at 4-9; Record at 1071-72, 1124-25. I agree that, because the ALJ did not clarify with the VE whether the plaintiff's test scores would alter the VE's prior response that the plaintiff could perform the representative jobs with certain limitations, the ALJ erroneously rejected uncontradicted VE testimony. As a result, her Step 5 finding is not supported by substantial evidence, requiring remand.

## A. Relevant Background

On March 9, 2017, agency examining consultant Patricia Kolosowski, Ph.D., performed a psychological evaluation of the plaintiff during which she administered the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV) test, yielding a full-scale IQ of 83, in the 13th percentile and "within the low-average range[,]" and, as relevant here, a score of 76 on the Verbal Comprehension Index, in the 5th percentile and "within the borderline range[.]" Record at 1583-85. Dr. Kolosowski noted that the plaintiff "showed good motivation and persistence[,] and the current results appear to be a representative sample of her cognitive abilities at this time." *Id.* at 1585. She provided a medical source statement in which she stated, *inter alia*, that the plaintiff "present[ed] as being able to do simple repetitive-type tasks and more complicated-type tasks for which she was trained." *Id.* at 1586.

The ALJ accorded Dr. Kolosowski's opinions "great weight as they are supported by [her] mental status and objective test results, and consistent with the record as a whole," including the testimony at hearing of psychological expert Ira Hymoff, Ph.D. *Id.* at 1069.

Dr. Hymoff testified that, based on the Kolosowski evaluation as well as an earlier evaluation by a different expert, "it looks to me like . . . [the plaintiff is] capable at least of simple, repetitive tasks." *Id.* at 1098. The ALJ gave the Hymoff testimony "great weight[,]" noting that, "[i]n response to questions posed by the [plaintiff's] representative about the [plaintiff]'s low average to borderline I.Q. scores and working memory index in the fourth percentile, Dr. Hymoff testified that the [plaintiff] would manage and maintain pace for simple repetitive tasks." *Id.* at 1066.

The ALJ asked the VE present at the hearing whether a person who, *inter alia*, could "understand to carry out short, simple instructions" could perform work. *Id.* at 1113. The VE testified that such an individual could perform the representative jobs of table worker, *Dictionary*

4

*of Occupational Titles* (U.S. Dep't of Labor 4th ed., rev. 1991) (*DOT*) § 739.687-182, 1991 WL 680217, printed circuit board assembly inspection touch-up screener, *DOT* § 726.684-110, 1991 WL 679616, and document preparer, *DOT* § 249.587-018, 1991 WL 672349. *See id*. at 1113-14.

On cross-examination, the plaintiff's counsel asked the VE whether the plaintiff's "serious deficiencies in terms of reading" would preclude the job of document preparer. *See id*. at 1121. The VE testified that he did not know, noting that the job had a reasoning skill level of 3 and a language skill level of 2. *See id*. The plaintiff's counsel then inquired whether, because the plaintiff was "at the bottom 10 percent or so in terms of her test scores[,]" even a language skill level of 2 would preclude her performance of the job. *See id*. The VE testified that he could not "exclude someone based on that type of test score" and could "only use the functional limitations I'm given." *Id*.

The plaintiff's counsel then pressed the VE as to whether he had taken the language skill level of 2 into consideration, and the VE testified that he always looked at the "education needed and aptitudes and those types of things." *Id*. at 1121-22. The plaintiff's counsel again asked whether a language skill level of 2 would be above the plaintiff's level, whereupon the ALJ interjected, "He doesn't know what her level is[,]" engaging in the following colloquy with the VE:

> ALJ: Let me ask you this, . . . did you consider all of that when you were posed the three hypotheticals that I presented?
>
> VE: Did I – all I went into was the hypothetical that I was given.
>
> ALJ: And . . . would an individual with those hypothetical situations be able to perform those occupations that you identified?
>
> VE: As I stated, your honor, yes.

*Id*. at 1122.  The ALJ invited the plaintiff's counsel to ask an additional hypothetical question if he wished, noting, "right now, [the VE's] testimony is that an individual with those restrictions that were identified" in the ALJ's hypothetical questions could perform those jobs.  *Id*. at 1122-23.

The plaintiff's counsel availed himself of that opportunity, informing the VE that the plaintiff had a verbal IQ score of 76, in the 5th percentile.  *See id*. at 1123.  He inquired whether the VE was "familiar with the aptitudes[,]" and the VE answered, "Yes."  *Id*. at 1124.  The VE then agreed with the plaintiff's counsel that, per the *DOT*, all three jobs require a verbal aptitude in the 10th percentile or above.  *See id*. at 1124-25.  The *DOT*, as published online, indeed describes all three jobs as requiring a "Verbal Aptitude" of "Level 4 – Lowest 1/3 Excluding Bottom 10%[.]"  DOT §§ 739.687-182, 1991 WL 680217, 726.684-110, 1991 WL 679616, 249.587-018, 1991 WL 672349.[2]  The ALJ followed up with further questions of the VE, but none touched on the verbal aptitude necessary to perform the jobs at issue.  *See* Record at 1125-30.

At Step 5, in deeming the plaintiff capable of performing all three jobs, the ALJ explained:

> The [plaintiff's] representative has essentially argued that the [plaintiff]'s verbal I.Q. score and low broad reading, math, and written language scores mean that she is functioning in the bottom 10% of society; that according to the Revised Handbook for Analyzing Jobs, the lowest 10% of the population possesses a negligible degree of aptitude; and that low language skills below level 2 and aptitudes below 10% would prevent the performance of any of the jobs cited by the [VE].  However, the undersigned does not find this argument to be persuasive, as the representative has been unable to make a nexus between the medical evidence and his assertion that this [plaintiff] is functioning in the bottom 10% of society.

*Id*. at 1071-72 (citations omitted).  She elaborated, "Although the [plaintiff's] verbal comprehension index score and working memory index score were noted to be in the fourth and

---

[2] While the aptitudes were "not included in the final published edition of the DOT[,]" they "have been included as part of the DOT entries in online sources, and courts generally have treated [them] as a component of the DOT job titles." *Jenkins v. Colvin*, Civil No. 1:14-cv-285-DBH, 2015 WL 5093290, at *2 n.8 (D. Me. Aug. 28, 2015) (citations omitted).

fifth percentile, the extreme degree of impact of those scores asserted by the representative [is] not reliably supported" and not consistent with (i) the statements of psychological experts, including Dr. Kolosowski, (ii) "the [plaintiff]'s wide ranging and functional activities of daily living[,]" or (iii) "an individual functioning in the bottom 10% of society." *Id*. at 1072 (citations omitted).

She added that the plaintiff's counsel "did not state any limitations arising from the scores cited, and it is Agency policy that aptitudes reflect the personal interests, natural abilities, and personality characteristics of job incumbents, rather than limitations or restrictions resulting from a medically determined impairment(s) as required for SSA's disability programs." *Id*. She concluded:

> The undersigned has not found the [plaintiff] to be as limited as the representative suggested, and for the reasons stated above does not find his arguments with respect to this [plaintiff] functioning in the bottom 10% of society to be persuasive. Furthermore, in response to a subsequent question by the undersigned, the [VE] testified that he was convinced that an individual with the restrictions set forth in the above-cited [RFC] would be able to perform the jobs he had identified.

*Id*.

### B. Analysis

The plaintiff asserts that, in so finding, the ALJ missed the key point – that this was a vocational issue with respect to which the VE was competent to testify, a proposition for which she cites *Jenkins*, 2015 WL 5093290, at *3. *See* Statement of Errors at 9. As a result, she reasons, "[t]he question was not whether [she] [wa]s capable of simple work as the psychologists opined[,]" but, rather, "whether [she] was capable of performing the three particular jobs identified by [the VE]." *Id*. On that front, she observes, the VE himself "testified that all three jobs require Verbal Aptitude greater than the 10th percentile." *Id*. She adds that the ALJ failed to cite any authority for any agency policy forbidding the consideration of verbal aptitude, noting that the commissioner

defines "basic work activities" as "the abilities and *aptitudes* necessary to do most jobs." *Id*. at 8 (quoting 20 C.F.R. § 416.922) (emphasis added by plaintiff).[3]

In defense of the ALJ's decision, the commissioner advances the same rationale articulated by the ALJ for rejecting the VE's testimony, arguing that the Hymoff testimony "severed the nexus Plaintiff tries to make between IQ scores and aptitudes," as a result of which the ALJ properly rejected the VE's testimony on the matter. Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 17) at 4-9, 12-13; *see also* Record at 1071-72. He contends that, in this case, in contrast to *Gwendolyn L. v. Berryhill*, No. 1:18-cv-00272-JDL, 2019 WL 2435673 (D. Me. June 11, 2019) (rec. dec., *aff'd* Sept. 4, 2019), "Dr. Hymoff's testimony provided the factual predicate needed to sufficiently address the 'predicate legal question' left unresolved in *Gwendolyn L.*," Opposition at 8, namely, "the type of evidence, if any, that a claimant must produce to establish a link between her IQ and her aptitude," *Gwendolyn L.*, 2019 WL 2435673 at *5. Finally, he disputes that the regulation cited by the plaintiff, 20 C.F.R. § 416.922(b), contains a definition of "aptitude" consistent with the IQ testing on which the plaintiff relies, noting that it describes the "abilities and aptitudes" necessary to do most jobs as including the ability to do simple, repetitive work. Opposition at 10-12.

The plaintiff has the better argument.

In *Gwendolyn L.*, the commissioner objected to a remand predicated on an ALJ's error in handling VE evidence "on the basis that the [claimant]'s theory that her IQ scores equate with her aptitude is fundamentally flawed both as a legal and a factual matter[,]" rendering remand an empty exercise. *Gwendolyn L.*, 2019 WL 2435673 at *5. This court disagreed, observing that the commissioner had cited "no case law of the Supreme Court, the First Circuit, or this court holding

---

[3] Both parties have cited regulations from Part 404 of the Code of Federal Regulations, which pertains to Social Security Disability (SSD) cases. I have cited the parallel regulations from Part 416, which pertains to SSI cases.

that, as a matter of law, IQ scores cannot serve as proxies for aptitudes." *Id*. "Thus," the court reasoned, "it cannot fairly be said that, following remand in this case, there could only be one conclusion on this point as a matter of law." *Id*. (footnote omitted).

That, in turn, was "dispositive of the commissioner's argument that the [claimant]'s post-hearing evidence is fundamentally flawed *as a factual matter*" because, "[a]bsent resolution of the predicate legal question of the type of evidence, if any, that a claimant must produce to establish a link between her IQ and her aptitude, it cannot fairly be said that, on remand, there could be only one conclusion as to the adequacy of the [claimant]'s showing." *Id*. (emphasis added).

The same is true here. The commissioner cites case law from other jurisdictions – but not controlling case law – for the proposition that IQ scores cannot serve as proxies for aptitudes. *See* Opposition at 8 & n.1. A factual predicate (Dr. Hymoff's testimony), standing alone, cannot resolve the point in the commissioner's favor.

Nor has the commissioner shown that agency policy forbids the consideration of verbal or other aptitudes. While the regulation cited by the plaintiff provides six "[e]xamples" of "the abilities and aptitudes necessary to do most jobs[,]" including "[u]nderstanding, carrying out, and remember simple instructions[,]" it does not bar the vocational consideration of a claimant's verbal aptitude. 20 C.F.R. § 416.922(b).

In these circumstances, as the plaintiff argues, *see* Statement of Errors at 9, *Jenkins* is controlling. In *Jenkins*, as here, the VE testified on cross-examination that all of the jobs he had previously identified in response to the ALJ's hypothetical questions would be eliminated if he assumed the additional fact that the claimant was "in the bottom 10 percent of the population in accordance with her full scale IQ[.]" *Jenkins*, 2015 WL 5093290, at *2. In *Jenkins*, as here, the ALJ rejected that part of the VE's testimony on the basis that it clashed with the conclusions of

9

the psychiatric experts, "reason[ing] that her own [RFC] findings, as stated initially in her questions to the [VE], trumped the [VE]'s later answers on cross-examination about the effects of IQ or general learning ability on job availability." *Id.*[4] And in *Jenkins*, as here, "[f]or that conclusion the ALJ needed the [VE]'s testimony, and she did not pose the necessary question to obtain it." *Id.*[5]

Indeed, in this case, the ALJ merely reconfirmed the VE's prior response to the hypothetical limitations she had already posed, which did not require him to consider the effect of plaintiff's verbal test score, as underscored by his response that he only "went into . . . the hypothetical that [he] was given." Record at 1122; *see also id.* at 1113-16. The ALJ herself acknowledged the limited nature of this clarification, explaining that the VE testified "in response to a subsequent question by the [ALJ], . . . that he was convinced that an individual *with the restrictions set forth in the above-cited residual functional capacity* would be able to perform the jobs he had identified." *Id.* at 1072 (emphasis added). She never clarified whether the plaintiff could perform the jobs identified if the VE assumed both the ALJ's hypothetical RFC *and* the fact that the plaintiff possessed a verbal aptitude score in the bottom 10 percent.

Accordingly, as in *Jenkins*, "the ALJ's decision that the [plaintiff] is not disabled – in the face of the [VE]'s testimony on cross-examination that no jobs would be available to someone

---

[4] Judge Hornby explained that "the testimony was clearly within the scope of a [VE]'s expertise" and "was not psychiatric testimony[,]" the VE having given "an opinion about whether there were available jobs in the national economy for a person with specified characteristics, not about whether the claimant actually exhibited any particular characteristic." *Jenkins*, 2015 WL 5093290, at *2.
[5] Judge Hornby acknowledged that "[t]he case law demonstrates that there is disagreement over whether and to what degree general learning ability" – one of the 11 aptitudes listed in online versions of the *DOT* – "and IQ are interchangeable." *Jenkins*, 2015 WL 5093290, at *2 nn. 8-9. However, he noted, "If the ALJ had a problem with the lawyer's use of 'full scale IQ' as equivalent to general learning ability or as part of the claimant's [RFC], then the ALJ should have asked a clarifying question to ascertain whether the [VE] really believed that the claimant's IQ altered the [VE]'s earlier answers that the claimant could do certain jobs." *Id.* at *2 (footnote omitted). "Instead, while accepting that the claimant's IQ and general learning ability were both in the bottom 10%, the ALJ simply disregarded the [VE]'s testimony on cross-examination about the effect of this characteristic on whether a significant number of jobs were available." *Id.* (footnote omitted). The same is true here with respect to verbal aptitude.

10

with her characteristics – is therefore not supported by substantial evidence[,]" requiring remand. *Jenkins,* 2015 WL 5093290, at *3.[6]

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 25th day of April, 2021.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[6] The commissioner further contends that accepting the plaintiff's argument would be tantamount to "a holding that an IQ score is *per se* disabling." Opposition at 9-10 (quoting *Davenport v. Berryhill*, No. 1:16-cv-00420-NT, 2017 WL 2731304, at *6 (D. Me. June 25, 2017) (rec. dec., *aff'd* Sept. 29, 2017)). Yet, in *Davenport*, the ALJ relied on the so-called "Grid," the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2, rather than on VE testimony. *See Davenport*, 2017 WL 2731304, at *5. The court distinguished *Jenkins* on the basis that, in that case, "the court took issue with the ALJ's failure to consider the testimony of a [VE] on how the claimant's IQ, which placed her in the bottom 10 percent of the population, affected the number of jobs available." *Id*. That distinction pertains here, as well.